WALTER MOISE & COMPANY v. WILLIAM KRUG.

FILED MAY 18, 1904. No. 13,349.

Liquor License: SALE OF LIQUORS: ESTOPPEL. The holder of a saloon license, who permits other parties to conduct a business under it in his name, is not liable for liquors furnished to those other parties by one who is aware of the situation, and deals with such parties on their own credit. As against such a claim, the license holder is not estopped to deny having made the purchase.

ERROR to the district court for Douglas county: WIL-LARD W. SLABAUGH, JUDGE. *Affirmed.*

*Cooper & Dunn* and *S. R. Rush,* for plaintiff in error.

*John C. Cowin, contra.*

HASTINGS, C.

. There seems to be but a single question in the present case. Does public policy require that one who takes out a license as a liquor dealer at a given place, and has the business conducted in his name, not only be conclusively deemed the proprietor of the place while it continues open under his license, but held liable to the vendor for all liquors sold to any one for the purpose of resale in such business? Plaintiff brought this suit on two causes of action: (1) For a balance for liquors sold and delivered at 1024 North 16th street, Omaha, while William McAvoy was managing and operating a saloon there as defendant's agent and representative. (2) For a like balance on account of goods sold and delivered at the same place, during the year previous, while it was operated by John Goodfellow in defendant's name. The total amount of the two claims is $1,081.44. The answer is a denial of the indebtedness, and a special denial that Mc-Avoy and Goodfellow, or either of them, were defendant's agents, and a general denial of all allegations. The reply alleged that defendant held a lease of the building; held the license under which the saloon run, and, consequently, could not permit or authorize any other person to conduct it in his name, and was estopped from denying the agency of Goodfellow and McAvoy, or his liability for the goods bought by them for sale in the saloon. At the trial the plaintiff requested three instructions to the effect that, if the saloon was with Krug's consent, licensed in his name and he permitted Goodfellow and McAvoy to conduct it, that made them his agents, and him responsible for their purchases. The court refused these instructions,

and told the jury that, if Goodfellow and McAvoy actually were Krug's agents in making the purchase, or if Krug's actions induced the plaintiff reasonably to believe they were his agents, and the goods were sold on the faith of it, the defendant would be liable; but that, if Goodfellow and McAvoy were not agents authorized to purchase the goods on defendant's behalf, and the plaintiff had no reason to believe, and did not believe, that they were authorized to purchase on defendant's behalf, plaintiff would be compelled to look to Goodfellow and McAvoy for payment.

It is not disputed that on the instructions given, the finding of the jury is supported by the evidence. As before indicated, the sole question seems to be, whether public policy requires that one who ostensibly conducts a saloon business, and has it licensed in his name, shall be conclusively held liable for purchases as well as sales. The trial court thought not, and applied to the case the ordinary doctrines of estoppel by acts and representations. The plaintiff earnestly contends that this was error, and that the defendant should no more be allowed to deny his responsibility for purchases than for sales; that the business is conclusively admitted to have been his, and that he should be held liable for all liquor that went into it for the purpose of sale in his name. The Nebraska case which seems to be most strongly relied upon is that of *Hall v. Hart*, 52 Neb. 4. The question in *Hall v. Hart*, as stated by the court, was, "Whether one purchasing the stock and business of a licensed saloon keeper, and by agreement continuing such business ostensibly in the name of, and by virtue of the license issued to, his vendor, will be heard to claim the property so purchased when taken to satisfy an execution or order of attachment against the latter for a debt existing at the date of such transfer." It was held that the purchaser who had continued to use the license of his vendor would not be permitted to allege and prove such a fraud upon the school fund of the state, in order to replevin the property which had been levied upon as

that of his vendor. This was on the ground that the agreement through which he must claim his title to the goods was a fraud upon public morals, and would not be permitted to be set up. There is little analogy to the present case. It even seems that the doctrine of *Hall v. Hart* would go rather against, than in favor of, the plaintiff's claim in this case. If the finding of the jury in the present case is correct, the sale of this liquor was to McAvoy and Goodfellow, made by the plaintiff with full knowledge that they were in fact conducting this business in defendant's name for their own benefit. If such action on their part, and on Krug's, was against public policy, it seems clear that plaintiff must be held to have been *particeps criminis.* Parties in *pari delicto* can hardly derive additional rights from its being a criminal transaction, if such it is. In fact, however, it would seem that the estoppel would go no further than to transactions in the way of selling. The law does not interfere in any way nor prescribe any restrictions as to the manner whereby liquor dealers shall obtain their stock. It is doubtless true that Krug would be estopped to deny that the sales made by Goodfellow and McAvoy were on his behalf. It does not seem to follow that defendant must be compelled to admit that purchases by them were his purchases. There seems nothing, either in law or public policy, which would prevent Krug's procuring all the liquor sold in the saloon from Goodfellow and McAvoy, and nothing which would prevent them from arranging to supply it and becoming personally responsible to any parties from whom it was procured. If they did so become personally liable to such parties, and the goods were sold to them and not to Krug, even if they were sold out under Krug's name and under his license, it would hardly seem to operate in any way to make him liable for them to the plaintiff.

It is recommended that the judgment of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.