The opinion of the Court was drawn up by
Cutting, J.
Writ of entry dated January 10th, 1859. Plea the general issue and brief statements. The demand-ant and tenant both claim the premises described in the writ under one Henry C. Lowell, whose title was admitted.
And it is further admitted, that the Shipbuilders’ Bank was incorporated March 7th, 1853, and duly organized; that on April 29fch, 1853, Lowell was duly chosen and qualified president and director; that on June 7th, 1853, one William L. Pitts, the son-in-law of Lowell, was .duly elected and qualified cashier, who, on the same day, gave his official bond in the penal sum of $40,000, with John Jones and Henry Ingraham, two of his sureties with others not residents of this State, which bond was approved by the directors; that Lowell, at the same time, gave his bond in the penal sum of $40,000, to Jones and Ingraham to induce them to become such sureties, conditioned to save them *249 harmless; that, on Oct. 14th, 1854, Loioell ceased to be a director, and I. K. Kimball was chosen director and president in his stead; that, on the same day, Pitts became a defaulter as cashier for a sum exceeding the penal amount of his bond, and was superseded by A. W. Kennedy in that office, when Lowell, at the request of Jones and Ingraham, gave them a mortgage of certain real estate, a part of which is the demanded premises, to secure his performance of the condition in his bond to them ,• that, on Oct.’ 26th, 1854, Lowell gave to the bank his bond in the penal sum of $40,000, conditioned to convey to Horace Merriam, Alden Ulmer, JEdward A. Mansfield and George Ihorndihe, directors of the bank, the real estate mortgaged to Jones and Ingraham, to indemnify the bank against loss on account of Pitts’ default, Lowell not being otherwise indebted to the bank; and that he did on the same day, in accordance with the conditions of his bond, convey to them the real estate.
On Dec. 1st, 1854, one Thomas W. Hooper commenced an action against Lowell on his acceptance of a draft for §2500 before October, 1854, and attached all his real estate in the then county of Lincoln; that, on Hooper’s decease, the demandant (Horatio JV'. Jose) was appointed administrator, who prosecuted the suit, and, at the January term, 1857, in Lincoln county, recovered judgment and execution for the amount of his claim and seasonably levied on the demanded premises.
On Dec.- 4th, 1854, Merriam and others released the real estate, of which they had received a deed of Lowell, to the bank, to effectuate the purpose of the conveyance to them; that, January 1, 1855, Jones and Ingraham, on condition of being discharged by the bank from their suretyship on Pitts’ bond, assigned their mortgage of Oct. 14th, 1854, to the bank, who, by their directors, on the same day, in consideration of the assignment and an obligation to indemnify them against Hooper’s attachment and to procure a release of Lowell’s wife’s right to dower, did so discharge them, the directors well knowing the consideration of the mortgage *250 at the date of its assignment; that, on January 1st, 1855, Lowell, in pursuance of that arrangement, and at the request of Jones and Ingraham, released the mortgaged premises and his wife her right to dower therein to the bank. Ingraham was an original stockholder, and has continued to be such; otherwise with Jones.
On Oct. 26th, 1854, the bank suspended payment, and Atwood Levensaler, Joseph Hewett and Abiel W. Kennedy were appointed receivers by the Court, January 10th, 1855, who thereupon took possession of the demanded premises as the property of the bank, and duly sold the same, together with Jpnes and Ingraham’s guaranty, July 8th, 1858, to the tenant (Hudson J. Hewett) for a sum less than $5000, leaving Pitts still a defaulter to a very large amount.
From the foregoing facts, it appears that both parties claim title to the demanded premises directly or indirectly under Henry O. Lowell, who was the undisputed owner of the same prior to Oct. 14th, 1854, the date of his mortgage to Hones and Ingraham, and Oct. 26th, 1854, the time of his release to Merriam and others, the directors' of the bank. Upon the force and effect of those two conveyances the tenant’s title principally depends, inasmuch as they were the only material transactions prior to the demandant’s attachment, which was on Dec. 1st, 1854, made by his intestate on a writ founded on Lowell’s acceptance before October of the same year. So that in order for the demandant to prevail he must successfully dispose of that mortgage and release. He attempts so to do.
And, first, he contends that’the mortgage was void because it was given to secure an obligation executed in violation of the statute of 1841, (Act of Amendment, c. 1, § 24,) which provides that, — "The bond of the cashier shall be renewed every year, in the month of October, and in no case shall the bond, given by the cashier, be signed by any director of the bank for which he is appointed.”
Lowell, being a director at the date of the cashier’s bond, could not, by the express language of the statute, have sign *251 ed as one of the sureties thereon, and, in not doing so, he has complied with the letter. But, could he evade the spirit of the law, by doing indirectly what he was forbidden to do directly? If so, the statute becomes a dead letter; for directors might readily approve of sureties, who should be indemnified by themselves, trusting, perhaps, more to their own indemnity than to the responsibility of such sureties. The directors, when sitting in judgment on the bond, would only have to say, the sureties must be sufficient, for we are to save them harmless. Such directors, in case of the default of their cashier, might not be too expeditious or over anxious to put his bond in suit. One cannot readily perceive a distinction between directors signing directly as sureties, or indirectly by their friends, upon such directors’ own responsibility; the two proceedings must amount to one and the same thing, and all the evils which the statute was intended to remedy would still exist. If any one shall have the curiosity to look at the recitals in Lowell’s bond* to *252 Jones and Ingraham, he will’ perceive a bold attempt at evasion, "the fruit” of which, the stockholders may well exclaim, brought " all our woe.”
The conclusion, then, to which we have arrived on this point, is, that the contract of indemnity, being in violation of law, was void and inoperative between the parties thereto, and the mortgage given to secure the same was equally so, both bearing such evident marks of suicide upon their face that no one could be reasonably deceived thereby.
The next apparent obstacle which precedes the demand-ant’s attachment, is Lowell’s release or quitclaim to the directors, of Oct. 26th, 1854. And it is contended, secondly, that it was without legal consideration, and void as against prior creditors. And it is clearly inferrible, from the evidence, that all the transfers from Lowell were for the purpose and with the design of securing his bond to the sureties or the bank against Pitts’ liabilities as cashier, when no legal responsibility was ever created, for the case finds that Lowell was not indebted to the bank, and that all the transactions were based upon his bond of indemnity, which we have already considered. Lowell may have had honorary creditors and a friendly disposition to comply with their wishes, but such creditors must yield to legal ones. We consider, therefore, those conveyances to have been made without legal consideration and voluntary, — gifts, fraudulent in law as against prior creditors, unless it has been made to appear that the residue of Lowell’s property was sufficient to respond such creditors’ just claims. It not so appearing, the demandant’s attachment and subsequent levy must prevail, and his action is maintained.

Tenant defaulted.

But, according to the agreement of the parties, "the ac *253 tion is to stand for trial for the assessment of damages for the detention.”
Tenney, C. J., Rice, May, Goohenow and Dayis, JJ., concurred.

 The condition of the bond is: — “ that whereas one William L. Pitts of Koclcland, aforesaid, had been elected cashier of the Shipbuilders’ Bank, situated at said Kockland, and had made his bond conditioned as therein specified, that he would well and faithfully discharge all the duties of cashier of said bank, and with diligence and fidelity perform all the duties of that office, agreeably to the laws regulating banking in this State, which bond he has caused to be signed and executed by Richard Pitts, Nathaniel Brinley, and Edward Brinley, as his sureties, the same bearing even date herewith; and whereas additional sureties being required, the said Henry Ingraham and John Jones, at my request, and upon my promise, agreement and obligation to secure and protect them from all liability thereby incurred, and to hold them forever harmless in the premises, and to pay any and all sums of money that might become due to said bank, at any and all times by reason of the non-fulfilment or non-performance on his part of the conditions of said bond, have this day become sureties thereto by signing and executing the same, which bond was thereupon accepted and approved by the directors of said bank. The terms and conditions of said bond will more accurately appear upon inspection of the instrument itself, to which reference may be had.
“Now, if the said Henry C. Lowell shall forever protect the said Henry In-graham and John Jones from all liability incurred by becoming sureties to the bond of said William L. Pitts, at his, the said Lowell’s request, and shall hold them, and each of them, their heirs, executors and administrators, forever harmless in the premises, by paying himself, any and all sums of money that *252 may at any time be due to said bank, by reason of the non-performance on the part of said "William L. Pitts, as cashier, of any of the conditions of his said bond, and shall secure and protect said Ingraham and Jones from all the legal consequences arising to them by reason of executing said bond at his said Lowell’s request, then this obligation shall be void, otherwise remain in full force and virtue.”